UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SANDRO ELBIRO NAVARRO CHAVARRIA, § § Plaintiff, § VS. § § MIKE POMPEO, *et al.*, § § Defendants. § § | CIVIL ACTION NO. 1:18-CV-165 |

## OPINION AND ORDER

Pending before the Court is Defendants Michael Pompeo and the United States of America's Motion to Dismiss (Doc. 15). Having considered the Motion, the parties' briefing, and the applicable law, the Court finds that the Motion should be granted in part and denied in part.

### I. Factual Allegations and Procedural History[1]

In June 1977, Plaintiff Sandro Elbiro Navarro Chavarria was born in the house where his mother lived in South Texas. About nine months later, his birth certificate was registered with the State of Texas. He continued to reside in South Texas throughout his childhood.

In August 2008, the United States Department of State issued Navarro a passport card valid for ten years. The next month, Navarro and his mother visited the United States Consulate General in Mexico regarding a pending I-130 Petition for Alien Relative, which Navarro had filed to seek a visa for his wife. At the Consulate, personnel asked to speak with Navarro's mother about the circumstances surrounding his birth. During those discussions, Navarro's mother signed a sworn statement indicating that her son was born in Mexico. Navarro alleges that his mother was "pressured" into signing the statement. In any event, in August 2009, the United States Citizenship and Immigration Services revoked the I-130 visa petition for Navarro's wife.

---

[1] Unless otherwise indicated, the factual allegations stem from Plaintiff's Amended Complaint for Declaratory and Injunctive Relief (Doc. 13).

1 / 10

The following month, Navarro requested a copy of his Texas birth certificate. After having his request denied, Navarro learned that the Texas Department of State Health Services ("TDSHS") had placed an addendum to his birth certificate, noting that the statement that his mother signed contained conflicting information about his birth. Navarro requested and obtained a hearing before the TDSHS, after which the agency concluded that "the addendum placed on his birth certificate should be removed, as conflicting information received by the State Registrar concerning the certificate was rebutted." (Am. Compl., Doc. 13, ¶ 17)

About nine years later, in April 2018, Navarro applied to renew his United States passport card, set to expire in August of the same year.

That July, Navarro traveled into Mexico and attempted to re-enter the United States at the Pharr, Texas port of entry. He presented his Texas driver's license to a Customs and Border Patrol officer, as his passport card remained with the Department of State in connection with his renewal application. The officer took about three hours to clear Navarro. During that time, the officer asked Navarro about his mother, the petition regarding his wife, and his birth certificate. (*Id.* at ¶ 19) The officer informed Navarro that "the system showed his case was open" and asked if Navarro had "received a letter or something from them". (*Id.*) Ultimately, the officer communicated that "everything looked fine" and allowed Navarro to enter the United States. (*Id.*) But the officer indicated that Navarro should present his Texas birth certificate to a local District Office "so they could clear him." (*Id.*)[2]

On August 28, 2018, Navarro's passport card expired without any action on his renewal application.

A week later, on September 5, Navarro received a Notice to Appear ("NTA") in immigration court. (Mt. to Dismiss, Doc. 15-1, 2) The NTA informed Navarro that the United States alleged that he was not a United States citizen and was "subject to removal from the

---

[2] The record before the Court does not indicate whether Navarro complied with the officer's request.

United States." (*Id.*) The NTA ordered Navarro to appear before an Immigration Judge at a date and time to be set. (*Id.*)

On October 17, 2018, Navarro filed this lawsuit, relying on 8 U.S.C. § 1503(a) and the Administrative Procedure Act ("APA"). (Compl., Doc. 1) As to Section 1503(a), he requested a declaratory judgment that he is a United States citizen. With respect to the APA, he first alleged a claim for "unreasonable delay" in processing his request for passport renewal, and asked that the Court order Defendants "to adjudicate his pending application." (Compl., Doc. 1, ¶ 32-34) He also challenged the Department of State's procedures related to passport-renewal applications as inadequate because they only permit documentary evidence and afford no meaningful review.

The next month, Navarro received a notice to appear before the Immigration Court in March 2019. (Mt. to Dismiss, Doc. 15-2)

In February 2019, the Department of State denied Navarro's application for renewal of his passport. He amended his Complaint to reflect this new development. (Am. Compl., Doc. 13)[3]

Defendants then filed their Motion to Dismiss, requesting dismissal of Navarro's Section 1503(a) claim because it arose in connection with a removal proceeding, and of his APA claim for lack of subject-matter jurisdiction because an adequate alternative remedy to pursue citizenship exists. (Motion to Dismiss, Doc. 15) Defendants also argue that if the Section 1503(a) claim survives dismissal, the United States is an improper party under that statute. Navarro contests all grounds for dismissal.

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss a plaintiff's claim when it fails to establish subject matter jurisdiction. *See Stockman v. Fed. Election*

---

[3] Although Navarro maintains his three causes of action in his Amended Complaint, the Department of State's denial of his passport-renewal application renders moot his request that the Court order Defendants to adjudicate that application. The Court will dismiss this claim without further consideration.

*Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A court lacks subject matter jurisdiction in the absence of statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking the federal forum has the burden to establish federal jurisdiction. *Stockman*, 138 F.3d at 151.

Although Defendants move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court construes the Motion solely under Rule 12(b)(1). The arguments that the Defendants advance concern the lack of subject matter jurisdiction, and not whether Navarro's well-pled allegations fail to state a claim upon which relief can be granted. Defendants also attach exhibits to their Motion. A court considers a Rule 12(b)(6) motion solely on the allegations in the Complaint, but can decide a Rule 12(b)(1) motion on "the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Villarreal v. Horn*, 203 F.Supp.3d 765, 770 (5th Cir. 2016); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (stating that a court does not "look beyond the face of the pleadings to determine whether relief should be granted" under Rule 12(b)(6)). The Defendants' arguments and their submission of evidence for the Court's consideration render their Motion as one under Rule 12(b)(1).

### III. Analysis

#### A. Claim under 8 U.S.C. § 1503(a)

A person who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency . . . upon the ground that he is not a national of the United States" may institute an action "declaring him to be a national of the United States". 8 U.S.C. § 1503(a). But under Section 1503(a)(1), no action may be instituted if the issue of the person's status as a United States citizen "arose by reason of, or in connection with any removal proceeding." 8 U.S.C. § 1503(a)(1). The context "of how the particular issue of citizenship arose rather than the mere timing of events" controls the analysis. *Rios-Valenzuela*

*v. Dep't. of Homeland Sec.*, 506 F.3d 393, 398 (5th Cir. 2007); *see also Garza v. Bennett*, No. B:17-158, 2017 WL 7248899, at *9 (S.D. Tex. October, 27, 2017) ("The key question in the jurisdictional inquiry is what motivated [the plaintiff] to take the action regarding his citizenship."). If the issue of a person's citizenship status arose by reason of, or in connection with any removal proceeding, the court lacks subject-matter jurisdiction and must dismiss the action. *See Rios-Valenzuela*, 506 F.3d at 398. But if the "citizenship claim finds its genesis outside of the context of removal proceedings, the [Section 1503(a)(1)] exception is no bar to jurisdiction." *Id.* at 399.

In Navarro's case, the relevant context establishes that the issue of his status as a United States citizen found its genesis in the events that preceded a potential removal proceeding. In April 2018, Navarro filed his application for passport renewal. (Amended Compl., Doc. 13, ¶ 9) His passport would expire several months later, on August 28, 2018. (*Id.* at ¶ 8) When he submitted the renewal application, he did so based on his alleged understanding that he was a United States citizen. No evidence suggests that when Navarro filed his application, an issue regarding his citizenship status existed.

Navarro argues that he expected a response to his renewal application by June 2018. (Resp. to Mt. to Dismiss, Doc. 16, 10) That month passed without word from the Department of State. In July, however, when Navarro attempted to enter the United States at a Texas port of entry, the official informed him that his file remained open, and questioned him about his birth certificate, the prior visa application for his wife, and his mother's name. The officer also instructed Navarro to report to a local District Office with his Texas birth certificate "so they could clear him." (Am. Compl., Doc. 13, ¶ 19) At this point, Navarro reasonably could have believed that an issue had re-emerged regarding the validity of his birth certificate and the location of his birth and, as a result, his status as a United States citizen. Although Navarro alleges that the officer at the port of entry indicated that "everything looked fine", given Navarro's history and the specific questions that the officer asked, a reasonable inference can be

made that the incident on the border raised Navarro's suspicions about the status of his citizenship.

Navarro's passport card then expired on August 28 without the Department of State's response to his renewal application. At this moment, months after he expected a decision regarding his passport, and having been informed by a port of entry official that he should report to a District Office with his Texas birth certificate, which he had years before had to defend, Navarro could reasonably believe that an issue had arisen regarding his citizenship status. Navarro may not have been able to rely on Section 1503(a) at the time, because the Department of State had not yet taken any "agency action" – i.e., they had not notified him of their decision regarding his passport card renewal or sent him a communication officially questioning his citizenship. But Navarro reasonably understood that an issue existed regarding his status.

A week after his passport expired, the Department of State communicated with Navarro, serving him with an NTA expressly notifying him that the United States claimed that he was "not a citizen or national of the United States." (Notice to Appear, Doc. 13, Ex. 1) The Defendants focus on this document as the point at which the issue of Navarro's citizenship status arose. But while the NTA directly communicated the United States' position regarding Navarro's citizenship status, it served only to confirm what a reasonable person under those circumstances would have already understood – i.e., the United States once again questioned whether Navarro was born in the country and, as a result, whether he was a United States citizen.

The Defendants' argument that Navarro's receipt of the September 2018 NTA represents the first moment that an issue arose regarding his citizenship status requires a finding that no issue can arise as to citizenship status until the Department of State chooses to send an official communication notifying an individual of an imminent removal proceeding. But the law does not render official government communications as the sole determinative factor regarding when the issue of citizenship "arose". Rather, the law requires analysis of the entire context related to

the individual seeking relief and his status as a United States citizen. In the specific context of Navarro, with his particular personal history and the specific events he experienced in the months before his lawsuit, the Court finds that the issue of the status of his citizenship arose months before he received the NTA and, at the latest, when the Department of State allowed his passport card to expire without action. These events all occurred before Navarro received the NTA that notified him for the first time that a removal proceeding was imminent. As a result, the issue of his citizenship status did not arise because of or in connection with a removal proceeding, and the Section 1503(a)(1) bar does not apply to his cause of action.

Defendants also contend that other federal district court decisions are analogous and that in those cases, the courts dismissed Section 1503(a) claims in similar circumstances. (Mt. to Dismiss, Doc. 15, 7–8 (citing *Garza v. Bennett*, Civ. Action No. B:17-158, 2017 WL 7248899 (S.D. Tex. Oct. 27, 2017), report and recommendation adopted, *Garza v. Bennett*, No. 1:17-CV-00158, 2018 WL 671271 (S.D. Tex. Jan. 31, 2018) and *Yi v. United States, et al.*, Civ. Action No. H-14-3289, 2016 WL 8488349 (S.D. Tex. March 31, 2016)). In each of these cases, however, no facts demonstrated that an issue regarding the plaintiff's status as a United States citizen existed before removal proceedings had begun. In *Garza*, the plaintiff had no knowledge and no reason to suspect that the United States questioned his citizenship status until they detained him and, on the same day, had him sign a notice to appear in immigration court. And in *Yi*, the plaintiff initially sought naturalization, implicitly acknowledging that he did not claim to be a United States citizenship. Only after removal proceedings had begun did the plaintiff change his request to one for citizenship. *Yi*, 2016 WL 8488349 at *6.

Also in *Yi*, the court distinguished a case in which a plaintiff was permitted to pursue a Section 1503(a) claim because she "asserted her citizenship claim by applying for a passport *before any removal proceeding was in sight.*" *Yi*, 2016 WL 8488349 at *6 (emphasis added) (distinguishing *Raya v. Clinton*, 703 F.Supp.2d 569 (W.D. Va. 2010)). In *Raya*, which considered the Fifth Circuit's decision in *Rios-Valenzuela*, the Department of State had denied

the plaintiff's request for a passport. A few years later, the government initiated removal proceedings against the plaintiff. She then filed an action under Section 1503(a). The court rejected the defendant's Section 1503(a)(1) defense, reasoning that the "genesis" of the plaintiff's nationality claim stemmed back to the failed attempt to obtain a passport, and not to the removal proceedings. *Raya*, 703 F.Supp.2d at 575. Similarly, in the current case, the expiration of Navarro's passport card, coupled with his personal history regarding his birth certificate and the specific statements that the port-of-entry officer made to him while his renewal application was pending, demonstrate that the issue of Navarro's citizenship arose before he had any knowledge that the government intended to initiate removal proceedings against him.

While Navarro's Section 1503(a) claim may proceed, the claim can be properly brought only against the Secretary of State. Section 8 U.S.C. § 1503(a) provides that a party may bring an action only "against the head of such department or independent agency" that denies a right or privilege to a party claiming to be a national of the United States. It is the head of the Department of State, and not the United States, that is the proper party.

### B. Claim under the Administrative Procedure Act

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This provision waives the Government's sovereign immunity. *See Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014). But the limited waiver applies only to "actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review." *Id.* (citation omitted). The APA provides for judicial review of final agency action when a relevant administrative agency's statutory provision does not directly provide for judicial review. *See* 5 U.S.C. § 704. This section restricts judicial review under the APA to "final agency action for which there is no other adequate remedy in a court." *Id.*

The Fifth Circuit has concluded that Section 1503(a) "provides an adequate alternative remedy to APA review" when the Department of State denies an individual's application for passport renewal on the grounds that the individual is not a United States citizen. *See De la Garza Gutierrez v. Pompeo, et al.*, 741 Fed.Appx. 994, 997 (5th Cir. 2018) (per curiam); *see also Ballin v. Kerry, et al.*, Civ. Action No. 1:12-121, 2013 WL 12142364, at *2 (S.D. Tex. March 29, 2013) ("Numerous federal courts have held that § 1503(a) provides an adequate remedy for the denial of an application for a passport based on the applicant's failure to establish citizenship." (citing cases)). In these circumstances, the Section 1503(a) cause of action "provides a 'direct and guaranteed path to judicial review . . . .'" *De la Garza Gutierrez*, 741 Fed. Appx. at 999 (quoting *Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018) (per curiam)). The existence of an adequate alternative remedy to APA review requires dismissal for lack of subject matter jurisdiction. *Id.* (affirming district court's dismissal of APA claim).[4]

Navarro presents no argument distinguishing his cause of action from these analogous cases. His cause of action under the APA fails for lack of subject matter jurisdiction.

## IV. Conclusion

For these reasons, it is:

**ORDERED** that the Motion to Dismiss is **DENIED** as to Navarro's claim under 8 U.S.C. § 1503(a) against Michael Pompeo;

**ORDERED** that the Motion to Dismiss is **GRANTED** with prejudice as to Navarro's claim under 8 U.S.C. § 1503(a) against the United States of America;

**ORDERED** that the Motion to Dismiss is **GRANTED** without prejudice as to Navarro's claim under the Administrative Procedure Act for lack of subject matter jurisdiction; and

**ORDERED** that Navarro's cause of action under the Administrative Procedure Act requesting an Order that Defendants adjudicate his application for passport-card renewal is dismissed as moot.

---

[4] In addition, Navarro's appellate rights in the removal proceeding also would provide an adequate alternative remedy to judicial review. *See Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 396–7 (5th Cir. 2007).

SIGNED this 10th day of May, 2019.

                                                _____
                                                Fernando Rodriguez, Jr.
                                                United States District Judge